[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiffs Carmen Valez Myers and her husband Robert Myers are appealing pursuant to General Statutes 4-183 and 17-2b(b) from decisions of the defendant Department of Income Maintenance (dim) reducing the plaintiffs' Old Age Blind and Disabled Assistance benefits after a fair hearing pursuant to General Statutes 17-2a.
The record reflects the following facts. The plaintiffs are husband and wife, and both are and have for their lifetimes been totally disabled, confined permanently to wheelchairs, and recipients of assistance from the defendant. On January 19, 1987, plaintiff Carment Velez Myers, who was then single and known as Carmen Velez, was struck by an intoxicated driver in Stamford, Connecticut while she was attempting to cross a public street in her wheelchair. The plaintiffs were married on May 20, 1989 and live together at New Horizens Village in Unionville, Connecticut, a facility specially equipped to care for disabled persons.
Mrs. Meyers filed a lawsuit against the driver who had insurance coverage of $300,000.00 and, apparently, no other assets. On January 11, 1990, after considerable negotiation, CT Page 842 the suit was settled for a structured cash value of $288,048.00. The settlement provided for an immediate cash payment of $188,595.51 and an annuity for the balance, $99,387.49. The $188,595.51 lump sum was reduced by an attorney's fee and costs of $98,105.00; a State welfare lien of $30,000; and Medicare and insurance reimbursements of $23,521.34; leaving a balance of $36,969.17. The remaining cash was devoted to the specific purposes of purchasing a handicapped-equipped van, insured for the first year of use, and a motorized wheelchair. The $99,387.49 annuity is payable in installments of $524.55 per month. Monthly, plaintiffs retain $200.00 for maintenance of the van and forward the balance ($324.55) to the defendant. The defendant then reduces plaintiffs' State Supplement benefits by $200.00 monthly, $100.00 from Mrs. Meyers and $100.00 from Mr. Myers. The defendant considers the $200.00 retained by Mrs. Myers as applied income to her benefit award, and deemed income received by a recipient's spouse in Mr. Myers' case. The fair hearing officer upheld defendant's reduction of plaintiff's benefits stating he "was unable to find anything in departmental policy that allows the Department to disregard the $200.00 payment as monies to be used for the upkeep of the appellant's van." Record, p. 2.
The plaintiffs allege in their appeal that the $200.00 per month of the $524.55 annuity payment was duly negotiated and agreed upon between the plaintiffs and the defendant. The plaintiffs further allege that the defendant should be estopped from reducing the benefits paid to the plaintiffs in that plaintiffs acted reasonable reliance upon representations and assurance given to Mrs. Meyers and her counsel by the defendant and its duly authorized representative in negotiating said settlement; making payment to the defendant upon the welfare lien; and releasing all of her rights against the driver of the car which injured her.
On September 20, 1990, plaintiffs instituted this timely filed appeal requesting the court to sustain their action and render a judgment ordering defendant to reinstate the $100.00 monthly payment to each plaintiff. They claim that the DIM's decision should be reversed because: (1) it was in violation of statutory and constitutional provisions; (2) it was in excess of the statutory authority of the agency; (3) it was affected by an error of law; (4) it was clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; and (5) it was arbitrary and capricious and characterized by abuse of discretion.
General Statutes 17-2b(b) provides that a person aggrieved by a decision of the Department of Income Maintenance "may appeal therefrom in accordance with section 4-183." General CT Page 843 Statutes 4-183 states in part that "(a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court as provided in this section. . ." To establish aggrievement a party must first demonstrate a specific personal and legal interest in the subject matter of the agency decision and, second, establish that said interest has been specifically and injuriously affected by said decision. Light Rigging Co. v. Department of Public Utility Control, 219 Conn. 168,173 (1991). The plaintiffs in this matter have a specific personal and legal interest in their benefits which have been reduced by the defendant's decision; plaintiffs are aggrieved.
Appeals from administrative agencies exist only under statutory authority. Chestnut Hill Realty, Inc. v. Commission on Human Rights and Opportunities, 201 Conn. 350, 356 (1986). The function of the court is to determine from the record before it, without substituting its own discretion, whether the administrative agency acted illegally or in abuse of its powers. Connecticut Television Inc. v. Public Utilities Commission,159 Conn. 317, 324-25 (1970). On appeal, the court may not retry the case or substitute its judgment for that of the administrative agency. CH Enterprises, Inc. v. Commissioner of Motor Vehicles, 176 Conn. 11, 12 (1978). The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. New Haven v. Freedom of Information Commission, 205 Conn. 767, 773 (1988).
The plaintiffs maintain that an express contract existed between Mrs. Myers and DIM, under the terms of which Mrs. Myers and the DIM, under the terms of which Mrs. Myers would receive $200.00 per month to maintain her van without adversely affecting her benefits. Second, the plaintiffs argue that a "contract by conduct" or an implied contract existed because the DIM conducted itself in such a way as to lead Mrs. Myers to conclude that she would receive $200.00 per month to maintain her van without adversely affecting her benefits. Third, the plaintiffs maintain that contract by estoppel has arisen because the DIM induced Mrs. Myer to believe that she would receive $200.00 per month to maintain her van without adversely affecting her benefits. The defendant complains that the plaintiffs' contract claims are not properly the subject of this appeal as they were never raised at the administrative level. Although the specific words of art may be inarticulate, the record is clear that the plaintiffs three claims were preserved.
The plaintiffs' claim that the defendant is bound by either express or implied contract ("contract by conduct") to maintain CT Page 844 plaintiffs' pre-settlement State Supplement award levels will survive only if mutual agreement between the parties is found. To constitute an offer and acceptance sufficient to create an enforceable contract, each must have been found to have been based on an identical understanding by the parties. Bridgeport Pipe Engineering Company v. DeMatteo Construction, 159 Conn. 242,249 (1970). It is a basic principle of contract law that in order to form a binding contract there must be an offer and acceptance based on a mutual understanding by the parties. Lyon v. Adgraphics, 14 Conn. App. 252, 254-55 (1988). Whether a contract exists is a question of fact, like an express contract, depends on actual agreement. Coelho v. Posi-Seal International, Inc., 208 Conn. 106, 111 (1988). The test is whether the conduct and acts of the parties show agreement. Brighenti v. New Britain Shirt Corporation, 167 Conn. 403 (1974). Accordingly, to prevail on the allegation that an express or implied contract existed between the parties, the record must show that DIM agreed, either by words or action or conduct, to undertake some form of actual contract commitment to the plaintiffs, pursuant to which their State Supplement benefits would not be adjusted upon their receipt of additional income.
The plaintiffs contend that a contract, express or implied, was established by the following four-step scenario, as established by the record: (1) A letter (offer), dated March 31, 1989, from plaintiffs' attorney to Edwin Miranda of the DIM. Record, p. 8.; (2) A letter (rejection and counteroffer), dated April 27, 1989, from plaintiffs' attorney to Patrick B. Hearn of the DIM. Record, p. 64-65, Transcript, pp. 5, 8-9, 10.
The plaintiffs state in their brief that the paramount error in the decision is that the hearing officer seized upon the April 27, 1989 letter form Mr. Hearn to plaintiffs' counsel and its statement that eligibility would be jeopardized by the monthly payment. The hearing officer, plaintiffs contend, ignored the "subsequent agreement" which resulted when Mr. Hearn spoke with plaintiffs' counsel by telephone and stated that plaintiffs' eligibility would not be affected by their retention of $200.00 monthly from the annuity.
The administrative record, upon which the court's review must be solely, based, establishes that the hearing officer could have reasonably concluded that there was no contract, express or implied. The transcript reveals that there was a significant misunderstanding between the plaintiffs' attorney and Mr. Hearn of the DIM as to the precise effect the $200.00 monthly annuity payment would have on the plaintiffs' benefits.
Mr. Hearn testified at the hearing follows: I think CT Page 845 the real issue here is . . . a misunderstanding between [plaintiffs' counsel] and myself, as how a specified amount of an annuity payment would effect Mrs. Myers' award and her eligibility." Record, Transcript, p. 4. Plaintiffs' counsel countered: "We ascertained with the department that the . . . retention of the $200.00 by Mrs. Myers would not effect [sic] her eligibility. What apparently is a misunderstanding between myself and Mr. Hearn with whom I have had long and very amicable dealings over the past several years is that his understanding was that it might not effect [sic] your eligibility but we will take it off your monthly payments. . ." Record, Transcript, p. 5. Plaintiff's counsel further states: "I didn't understand [the] distinction between eligibility and cutting back on the amount of payments." Record, Transcript, p. 8. Finally, plaintiffs' counsel states: "I think that Mr. Hearn has been honest and forthcoming in what he said to you that it was a misunderstanding and perhaps his fault in not distinguishing between eligibility and the amount of payments." Record, Transcript, p. 14. Given the parties' acknowledged differences in intention, neither an express contract nor an implied contact was created.
The court next turns to the issue of plaintiffs claim of contract by estoppel. In Kimberly-Clark Corporation v. Dubno,204 Conn. 137, 146-147 (1987) our Supreme Court noted that estoppel generally may not be invoked against a public agency in the exercise of its governmental functions. The Kimberly-Clark court observed, however, that under certain limited circumstances the government may be estopped:
 "Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . ." In addition, estoppel against a public agency is limited and may be invoked: (1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only special circumstances make it highly inequitable or oppressive not to estop the agency. As noted, this exception applies where the party claiming estoppel would be CT Page 846 subjected to substantial loss if the public agency were permitted to negate the acts of its agents. "`[I]t is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge.'"
Id., 148. (citations omitted).
The court has approached this matter with great caution. The circumstances are very special. A finding that the DIM not be estopped would be highly inequitable and oppressive. Plaintiffs' counsel reasonably concluded that Mr. Hearn was acting with authority regarding this matter. The record reflects that Mr. Hearn is an Investigation Supervisor for the DIM with several years experience, at least; and, that he and plaintiffs' counsel had long and amiable dealings in the past. Record, Transcript, pp. 3 and 5. Obviously, the plaintiffs would be subject to substantial loss if the DIM were permitted negate Mr. Hearn's actions. The crucial determinant is Mr. Hearn's honesty in accepting responsibility for the apparent error which occurred: "The misunderstanding was my fault. I was mostly concerned when the discussion of the amount to be paid to you came up. I was mostly concerned with preserving your eligibility. To make sure you stayed on the program. And I probably wasn't, I don't believe I distinguished between that and the amount you would get each month." Record, Transcript, p. 10.
As a result of the misunderstood telephone communication between Mr. Hearn and plaintiffs' counsel, plaintiffs were induced to believe that certain facts existed, and believing those incorrect facts to be true, the plaintiffs changed their position in reliance upon those erroneous facts, thereby incurring injury.
For the foregoing reasons, the plaintiffs' claim of estoppel is clearly supported by the reliable, probative, and substantial evidence of the whole record. Accordingly, the plaintiffs' appeal is sustained and the matter is remanded for administrative action consistent with this decision.
Martin, J.
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 858