[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an administrative appeal brought by the conservatrix of Svea Bostrom whose application for Title XIX benefits was denied by the defendant Department of Income Maintenance. The principal issue raised in this appeal is whether plaintiff's failure to request a fair hearing within the sixty days required by law should be excused because the denial notice sent by the defendant failed to inform the plaintiff of her right to be assisted at a fair hearing by counsel or nonlegal representative.
The facts giving rise to this appeal are not disputed by the parties. The plaintiff Svea Bostrom, who holds dual French and Finnish citizenship, entered the United States in 1985 on the basis of a tourist visa. Shortly after arrival in the United States plaintiff made application to the United visa. In the fall of 1988, plaintiff, who had been residing with her daughter, entered the Bidwell Health Care Center[1]. On January 31, 1989, plaintiff, through her daughter, who had been appointed her conservatrix, applied to the Department of Income CT Page 3523 Maintenance for Title XIX benefits. On June 1, 1989, by notice mailed to her conservatrix, plaintiff's application was denied because of her immigration status. Defendant's notice advised plaintiff of her right to request a fair hearing within sixty days of the denial, but failed to advise her, as required by state and federal regulations, of the address of the local Legal Aid office and of her right to be represented at the hearing.
Neither plaintiff nor her conservatrix requested a fair hearing within the sixty day period required by law. Plaintiff, however, did file a second application for Title XIX in November 1990, which was also denied because of her immigration status. Plaintiff, now represented by a Legal Aid attorney, filed a timely request for a fair hearing with respect to the second denial and also requested a fair hearing to consider the first denial even though the first application had been denied eighteen months earlier. A consolidated fair hearing was held with respect to both applications. While the fair hearing officer reversed the Department's denial of plaintiff's second application, he refused to reopen the first application, ruling that plaintiff's request for a fair hearing was barred by the failure of plaintiff to request a hearing within the sixty day period required by defendant's regulations. Plaintiff now appeals from that portion of the fair hearing officer's decision that refused to review the denial of her 1989 application for Title XIX.
 I.
The scope of review under the Uniform Administrative Procedure Act, Conn. Gen. Stat. sec. 4-165 et. seq. is limited. Neri v. Powers, 3 Conn. App. 531, 537 (1984), citing Lawrence v. Kozlowski, 171 Conn. 705, 707 (1976). "The function of the court [is] to determine from the record before it, without substituting its own discretion, whether the [administrative agency] acted illegally or in abuse of its powers." Connecticut Television, Inc. v. Public Utilities Commission, 159 Conn. 317,324-5 (1970). An aggrieved party is entitled "only [to] a review of the proceedings before the [agency] to determine whether the action appealed from was legal." Id. at 329; Neri v. Powers, supra. On appeal, the court may not "'retry the case or substitute its judgment for that of the defendant."' CH Enterprises, Inc. v. Commissioner of Motor Vehicles, 176 Conn. 111, 112,404, A.2d 864 (1978); DiBenedetto v. Commissioner of Motor Vehicles, 168 Conn. 587, 589 362 A.2d 840 (1975); see General Statutes sec. 4-183 (g). "The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." New Haven v. Freedom of Information Commission, 205 Conn. 767, CT Page 3524 773 (1988).
 II.
In 1965, Congress enacted Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., also known as the Medicaid Act. This act established a program by which the Federal government reimburses states participating in the program for a portion of the costs incurred by those states in providing certain medical services to needy individuals. See, Schweiker v. Gray Panthers, 453 U.S. 34, 101 S.Ct. 2633,69 L.Ed.2d 460 (1980). In order to participate in the Medicaid program a state must develop and then file with the Secretary of Health and Human Services a plan which complies with requirements imposed both by the Medicaid Act and by the Secretary. Each state must designate a single agency to administer or supervise the administration of its Medicaid plan. Connecticut has elected to participate in the Medicaid program, Conn. Gen. Stat. sec. 17-134 et seq., and the defendant Department of Income Maintenance is thus bound by the laws and regulations governing the administration of the Medicaid program. Id.; Clark v. Commissioner of Income Maintenance, 209 Conn. 390
(1988).
As part of its obligation to administer and supervise the Medicaid program the defendant is required to provide fair hearings to those persons who are adversely affected by agency decisions. 42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 431.200
et. seq. The requirement that agencies administering public benefits provide an internal appellate mechanism, known as a fair hearing, to review agency decisions concerning eligibility, is grounded in the Fourteenth Amendment Due Process Clause. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011,25 L.Ed.2d 287 (1970). In the context of public benefits, the essential elements of due process are notice and the opportunity to be heard. Id. Defendant's fair hearing system is established by Conn. Gen. Stat. sec. 17a-2 et seq. The procedures for the hearings, which "must meet the due process standards set forth in Goldberg v. Kelly and any additional standards specified" by the Secretary, 42 C.F.R. § 431.202 (d); are contained in both the federal regulations, Id.; and in the Department of Income Maintenance Uniform Policy Manual Sec. 1570 et seq.
In addition to providing a hearing in accordance with Goldberg v. Kelly, federal regulations also require that the state agency inform every applicant or recipient in writing, "(1) of his right to a hearing; (2) of the method by which he may obtain a hearing; and (3) that he may represent himself or use legal counsel, a relative, a friend, or other spokesman." This information must be provided to the applicant in writing CT Page 3525 at the time of any action affecting his claim.42 C.F.R. § 431.206. Defendant's Uniform Policy Manual Sec. 1570.05(E)(2)(c) and (d) substantially tracks the federal regulations. The provisions of the Uniform Policy Manual, which are treated as regulations and are binding on the defendant, Savage v. Aronson, 214 Conn. 256 (1990); require, inter alia, that any applicant for Title XIX benefits be provided with written notification of the agency decision. The Policy Manual also requires that the applicant be advised of her right to request a fair hearing within sixty days of the agency decision. The regulations further require that the denial notice also inform the applicant of her right to have a representative, including an attorney, present at the hearing and of the address of the local Legal Aid office.
 III.
The defendant concedes that the denial notice sent by it to the plaintiff did not comply with the requirements of its Policy Manual or with the federal regulations. Defendant insists, however, that the plaintiff was not prejudiced by the defective notice, in that the plaintiff, according to defendant, would not have filed a timely appeal even if proper notice had been given. Resolution of the claims made by the parties depends on the answer to two subsidiary questions. The first is whether the harmless error rule applies in administrative proceedings when the agency's failure to follow its own rules implicates individual rights which are at the core of the fair hearing system. If the harmless error rule applies, the second question is whether the plaintiff or defendant bears the burden with regard to proof of prejudice.
 A.
Courts and commentators alike disagree on whether an agency's violation of its own rules constitute per se reversible error. The general trend is toward finding per se reversible error, even in the absence of proof of prejudice, when the agency rule in question affects individual rights, but to require a showing of harm when the agency rule governs internal procedures only. See, generally, Montilla v. Immigration and Naturalization Service, 969 F.2d 162 (2nd Cir. 1991) (collecting cases); contra, United States v. Calderon-Medina, 591 F.2d 529
(9th Cir. 1979). Note, "Violations by Agencies of Their Own Regulations," 87 Har. L. Rev. 629 (1974).
The Second Circuit has rejected a prejudice test. In Montilla v. Immigration and Naturalization Service, supra, the administrative law judge failed to canvass the plaintiff-immigrant prior to his waiver of counsel. Despite the overwhelming CT Page 3526 evidence in favor of deportation and the absence of any viable defense, the Second Circuit concluded that the failure of the INS to follow its own regulations constituted reversible error even in the absence of proof of prejudice to the immigrant. The rationale of the Second Circuit's decision is instructive. It noted that the so called Accardi doctrine, which requires the reversal of agency decisions when the agency has violated its own regulations; U.S. ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); is grounded in the "long settled principle that the rules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency; Montilla v. INS, supra, at 166, quoting Columbia Broadcast System, Inc. v. United States, 316 U.S. 407, 422, 62 S.Ct. 1199, 86 L.Ed. 1563
(1942). This rule has been applied in a variety of other administrative proceedings; Yellin v. United States, 374 U.S. 109,83 S.Ct. 1828, 10 L.Ed.2d 778 (1963); Service v. Dulles,354 U.S. 363, 77 S.Ct. 1152; Smith v. Resor, 406 F.2d 141 (2nd Cir. 1969).
The Montilla court identified two practical considerations which informed its decision. First, adoption of a per se test would encourage agency compliance with its own rules. Second, "the use of scarce judicial resources is promoted. Adopting the prejudice test requires Judicial exploration of petitioner's arguments and burdens a court with carefully balancing the positives and negatives reflected in petitioner's circumstances to decide whether in hindsight the positives might so outweigh the negatives as to succeed in altering the result reached." Montilla v. I.N.S., supra, at 169.
Although our Supreme Court has not considered the precise issue raised in this appeal it has ruled in a similar case that as a matter of statutory construction Conn. Gen. Stat. Sec. 4-183 (j) permits reversal of an agency decision only upon a showing that the aggrieved party was prejudiced by the agency error. Conn. Gen. Stat. sec. 4-183 (j) states, "The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced. . ." In Henderson v. Department of Motor Vehicles,202 Conn. 453, 457 (1987), the Court stated, without discussion, that Sec. 4-184 (j) "requires that substantial rights of a party be prejudiced before an agency decision may be overturned." Accord, Martone v. Lensink, 207 Conn. 296 (1988); aff'd after remand, 215 Conn. 51 (1990). Based on Henderson and Martone, defendant's admitted failure to send proper notice to the plaintiff in this case does not require reversal of the agency action unless plaintiff has been prejudiced by that error.
B. CT Page 3527
The remaining question is whether the plaintiff or defendant bears the burden on the question of prejudice. While neither Henderson nor Martone speak directly to the issue in this case, the rationale of those cases control. In both matters the hearing officer had ex parte communications with the agency in violation of Conn. Gen. sec. 4-181. In Henderson, the Supreme Court rejected the Appellate Court's ruling that the burden of proving prejudice rested on the plaintiff. "Once it has been demonstrated that a violation of section 4-181 has occurred, a presumption of prejudice must be deemed to arise. Although this presumption is rebuttable, the burden of showing that a prohibited ex parte communication by an adjudicator has not prejudiced a party must be allocated to the agency if section 4-181 is to fulfill its salutary purpose." Henderson v. Department of Motor Vehicles, supra, at 457-58. Allocating the burden to the defendant was based on three factors identified by the court. The first is the fundamental requirement that a fair hearing officer not be influenced by matters outside the record. Second, the statutory prohibition against ex parte communications would have no independent meaning unless, "we place upon the agency that has violated its own provisions the burden of proving that no prejudice has resulted." Id. at 458-59. Finally, because of the nature of ex parte communications the agency itself is in the superior position to prove the absence of prejudice.
Based on the factors identified by the Henderson court — the nature and purpose of the right affected by the agency action and the superior position of the agency to shoulder the burden with respect to prejudice — this court concludes that the defendant in this case should bear the burden of disproving that the plaintiff was prejudiced by defendant's failure to comply with state and federal notice requirements. In arriving at this decision a number of general principles also guide this court's decision. First, "the Social Security Act is remedial or beneficent in purpose, and, therefore to be broadly construed and liberally applied in favor of beneficiaries." Cutler v. Weinberger, 516 F.2d 1282, 1285 (2nd Cir. 1975). Second, the grant or denial of benefits must be accomplished in accordance with the procedures set forth in defendant's own regulations as well as any other procedures required by the due process clause of our federal and state constitutions. Morton v. Ruiz, supra.
Third, the omissions in defendant's notice directly implicate the fundamental tenets of due process — the right to be heard and the right to be represented at an administrative hearing. Goldberg v. Kelly, supra. Whether it be in the area of constitutional criminal procedure, Powell v. Alabama, 287 U.S. 45, CT Page 352853 S.Ct. 75, 77 L.Ed. 158 (1932); Gideon v. Wainwright,372 U.S. 335, 83 S.Ct. 1756, 9 L.Ed.2d 799 (1963); or in the context of institutional hearings, Gagnon v. Scarpelli,411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); or in the context of public benefits, Goldberg v. Kelly, supra; our courts have consistently recognized the paramount importance of the right to counsel or where appropriate, the right to a non-legal representative, at those hearings in which decisions affecting a citizen's liberty or property interests are made. "Certain principles have remained immutable in our jurisprudence . . . This court has been zealous to protect these rights from erosion. It has spoken not only in criminal cases, but also in all types of cases where administrative actions were under scrutiny." Greene v. McElroy, 360 U.S. 474, 496-97, 74 S.Ct. 14003 L.Ed.2d 1377 (1959).
These cases also recognize that not only is the citizen entitled to the right to be heard and the right to be represented, but is also entitled to be notified of those rights. The central meaning of "procedural due process is that parties whose rights are to be affected are entitled to be heard and in order that they may enjoy that right, they must first be notified" Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983,32 L.Ed.2d 556 (1972). Both the federal regulations; 42 C.F.R. § 431
Sec. 431.200; and defendant's Uniform Policy Manual recognize that an individual's right to be notified of his procedural rights is as important an element of due process as are the rights themselves. Because defendant's notice failed to advise plaintiff of her right to be assisted at a fair hearing by an attorney or non-legal advisor; because it also failed to provide plaintiff with the address of the local Legal Aid office; and because these are significant individual rights given effect by state and federal regulation, this court concludes that the defendant should bear the burden of proving that the plaintiff has not been prejudiced by defendant's error.
 D.
In this particular case had the defendant provided plaintiff with the notice required by state and federal regulations, plaintiff would have learned of her right in 1989 to be represented at the fair hearing and of the address of the local Legal Aid bureau. In 1990, after her first application was denied, plaintiff again applied for and was denied Title XIX benefits. The notice of that decision properly advised plaintiff of her right to be represented and of the address of the Legal Aid Office. Significantly the second denial was later reversed by the fair hearing officer after a hearing in which plaintiff was represented by counsel. The influence counsel had on the outcome of the second application is evident. Under these circumstances CT Page 3529 the court cannot conclude that the defective notice to the plaintiff did not prejudice her. Had she received the correct notice, it is entirely plausible that she would have contacted the Legal Aid attorney, as she did after the second denial, and would have been advised to file a timely request for a fair hearing, notwithstanding her belief that the matter was being handled by the nursing home. "A lawyer might well have made a difference in the earlier proceeding — they usually do." Montilla v. Immigration and Naturalization Service, supra, at 170.
Under the circumstances of this case, the failure of the agency to properly notify the plaintiff of her rights with respect to the fair hearing requires that the matter be remanded for a new fair hearing. Other courts which have considered this claim have ruled similarly. See, Angelo v. Toia, 402 N.Y.S.2d 881-82 (1978), in which the Appellate Division of the Supreme Court ruled that petitioner was entitled to a fair hearing on the merits even though requested after the sixty day period for filing because the agency notice denying her medicaid benefits, "did not advise petitioner that she was entitled to be represented at a Fair Hearing by counsel or that if she could not obtain counsel for herself community legal services were available." Accord, Zellweger v. Department of Social Services, 547 N.E.2d 79 (1989) (failure of agency to follow its own rules excuses late appeal by plaintiff).
Based on the foregoing, the sixty day period for requesting a fair hearing is tolled. The refusal of the fair hearing officer to reopen the matter and consider plaintiff's argument on the merits was unreasonable, arbitrary, illegal and an abuse of his discretion. The matter is therefore remanded with directions that plaintiff be provided with a fair hearing to contest the denial of her January 31, 1989 application. At that fair hearing plaintiff will be given an opportunity to present any relevant information in support of her claim that she was eligible for Title XIX in January, 1989.
ROBERT L. HOLZBERG JUDGE, SUPERIOR COURT