[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this administrative appeal the plaintiff contests the defendant's denial of her application for Title XIX benefits. At the time of her initial application the plaintiff and her husband had joint assets, consisting principally of a bank account, of nine thousand dollars. Because the Medicaid resource limit for a married couple is twenty-four hundred dollars, plaintiff's application was denied even though during the, three-month period prior to the application being denied plaintiff had incurred in excess of $150,000 in medical bills. The principal issue raised in this appeal is whether the refusal of the defendant to set off plaintiff's accrued medical expenses against her excess resources is a violation of state and federal laws governing Title XIX. Resolution of this issue requires an odyssey CT Page 6283 through the labyrinths of the Social Security Act, a statute aptly described by one court as "an aggravated assault on the English language, resistant to attempts to understand it." Friedman v. Berger, 409 F. Sup. 1225, 1226 (S.D.N Y 1976).
The relevant facts are as follows. In February, 1990, the plaintiff, at the age of sixty-two, became seriously ill and was hospitalized for emergency treatment. Because she had no medical insurance she filed an application for medicaid benefits with the Department of Income Maintenance. As part of the application Mrs. Matarazzo, who was being assisted by her daughter, disclosed that she and her husband had a joint savings account of nine thousand dollars, which represented their life savings. Title XIX regulations require that a married applicant have less than twenty-four hundred dollars in assets. Based on information provided to them by the intake worker, Mrs. Matarazzo and her daughter reasonably believed that once the savings account was reduced to less than twenty-four hundred dollars, plaintiff's application would be approved retroactive to the date of application such that Title XIX would cover the approximately $150,000 in medical bills incurred by plaintiff. However, when plaintiff's application was approved on June 27, 1990, she was informed that it was granted retroactive to June 1. Consequently, the plaintiff remains responsible for the substantial medical bills that she incurred in the preceding three months even though the amount of those bills far exceeded her available assets at any given time during that period.
Plaintiff timely requested a fair hearing to contest defendant's refusal to employ a "resource spend down" policy in determining eligibility for persons whose incurred medical expenses exceed their total assets. If utilized, plaintiff would have become retroactively eligible for Medicaid if within the ninety days of her application her excess resources had been reduced to less than twenty-four hundred dollars. The defendant's, fair hearing officer refused to consider or rule on plaintiff's arguments regarding a resource spend down. Instead he concluded that plaintiff's application was properly denied since at the time it was filed her assets exceeded the limit of twenty-four hundred dollars for a married applicant. Plaintiff now appeals from that decision.
 I.
The scope of review under the Uniform Administrative Procedure Act, Conn. Gen. Stats. 4-165 et seq. is limited. CT Page 6284 Neri v. Powers, 3 Conn. App. 531, 537 (1984), citing Lawrence v. Kozlowski, 171 Conn. 705, 707 (1976). "The function of the court [is] to determine from the record before it, without substituting its own discretion, whether the [administrative agency] acted illegally or in abuse of its powers." Connecticut Television, Inc. v. Public Utilities Commission, 159 Conn. 317, 324-5 (1970). An aggrieved party is entitled "only [to] a review of the proceedings before the [agency] to determine whether the action appealed from was legal." Id. at 329; Neri v. Powers, supra. On appeal, the court may not "`retry the case or substitute its judgment for that of the defendant.'" CB Enterprises, Inc. v. Commissioner of Motor Vehicles, 176 Conn. 111, 112,404 A.2d 864 (1978); DiBenedetto v. Commissioner of Motor Vehicles,168 Conn. 587, 589 362 A.2d 840 (1975); see General Statutes4-183(g). "The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." New Haven v. Freedom of Information Commission,205 Conn. 767, 773 (1988).
 II.
Plaintiff raises two arguments in this appeal, both of which concern the failure of defendant to utilize a resource spend down policy[1] in evaluating plaintiff's application. The first alleges that since the Department of Income Maintenance utilized a resource spend down policy prior to January 1, 1972, it is required to continue utilizing a resource spend down even though policy directives interpreting the Social Security Act now prohibit use of a spend down. Second, plaintiff also claims that defendant is required to utilize a resource spend down policy in order to adhere to the statutory requirement that certain assets be disregarded when considering eligibility for Title XIX. In order to fully evaluate plaintiff's claims it is necessary to first consider the statutory framework of the Medicaid program.
 A.
In 1965, Congress enacted Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., also known as the Medicaid Act. This act established a program by which the federal government reimburses states participating in the program for a portion of the costs incurred by those states in providing certain medical services to needy individuals. See, Schweiker v. Gray Panthers, 453 U.S. 34,101 S.Ct. 2633, 69 L.Ed.2d 460 (1981). Connecticut has elected to participate in the Medicaid program and has designated the CT Page 6285 defendant as the single state agency to administer its medicaid program. General Statutes 17-134 et seq.
Originally, the Medicaid program required participating states to provide medical assistance to persons who received payments under one of four welfare programs established elsewhere in the Act. These programs were Old Age Assistance, Aid to Families with Dependent Children, Aid to the Blind, and Aid to the Permanently and Totally Disabled. Persons receiving aid under one of these four programs were referred to as the "categorically needy."
Since its enactment the Social Security Act has undergone major revisions. In 1972, Congress replaced three of the above-categorical programs with a new program entitled Supplemental Security Income for the Aged, Blind, and Disabled (SSI), 42 U.S.C. § 1381 et seq. It also extended coverage to persons described as "medically needy", that is, persons who meet the categorical requirements for SSI (i.e., aged, blind or disabled persons) but whose assets or income exceed the limits, that would qualify them for these programs.
As part of its 1972 revisions Congress retained the requirement that all recipients of categorical welfare assistance — now including the new SSI program — were also entitled to Medicaid. Because the new SSI standards were less restrictive than those that had existed before, the number of individuals eligible for Medicaid increased significantly in many states. Because Congress was concerned that states whose Medicaid liability increased as a result of SSI might opt out of the program entirely, it offered to those states what is known as the 209(b) option,[2] set forth at 42 U.S.C. § 1396a(f). See, generally, Schweiker v. Gray Panthers, supra, and Hogan v. Heckler, 769 F.2d 886 (1st Cir. 1985).
Under the so-called 209(b) option, states could elect to provide Medicaid assistance only to those individuals who would have been eligible under the state Medicaid plan in effect on January 1, 1972. States selecting the 209(b) option, therefore, may have more restrictive eligibility requirements than those in effect on January 1, 1972. In short, a 209(b) state can have eligibility requirements more restrictive than those of the federal SSI program, but it cannot have eligibility requirements which are more restrictive than the requirements that state had on January 1, 1972.
Connecticut is one of fourteen states that has elected CT Page 6286 the 209(b) option. It therefore retains its eligibility standards as of January 1, 1972. Clark v. Commissioner of Department of Income Maintenance, 209 Conn. 390, 395 n. 4 (1988). Additionally, 209(b) states such as Connecticut are required to adopt an income, but not a resource spend down provision, under which an individual whose income exceeds the state standard can become eligible for Medicaid when the excess (that portion of her income that exceeds the state standard) is spent by the applicant. Schweiker v. Gray Panthers, supra at 39 n. 5.
Because Connecticut is a 209(b) state, plaintiff contends that defendant must utilize the same eligibility criteria for Medicaid applicants as was used on January 1, 1972. Because, according to plaintiff, the defendant utilized a resource spend down in January 1972, it must carry forward the same policy today. The essence of plaintiff's argument, therefore, is that defendant erred by not utilizing the same eligibility criteria in 1991 as were in effect on January 1, 1972.
Plaintiff's argument requires consideration of three subsidiary points. First, that the use of a resource spend down was part of the approved state plan in effect on January 1, 1972. Second, that the use of a resource spend down is presently permitted despite a 1980 directive from the Department of Health and Human Services prohibiting a spend down; and third, that had plaintiff applied for Title XIX on January 1, 1972, her application would have been approved according to the rules then in effect.
Section 209(b), codified at 42 U.S.C. § 139a(f) provides that:
 . . . no state . . . shall be required to provide medical assistance to any aged, blind or disabled individual unless such state would be (or would have been) required to provide medical assistance to such individual . . . had its plan for medical assistance approved under this subchapter and in effect on January 1, 1972 been in effect . . . (emphasis supplied).
By its terms Sec. 209(b) requires a state to continue to provide medical assistance subsequent to January 1, 1972, only if that assistance was required by an approved state plan in effect on that date. Pursuant to the Social Security Act each state participating in the Medicaid program must have a plan approved by the Secretary of the Department of Health and Human Services. In accordance with federal CT Page 6287 regulation once the state plan is approved the state must then administer its Title XIX program in conformity with the plan. For purposes of 209(b) states such as Connecticut, the written plan in effect as of January 1, 1972, is critical since it is that plan that defines the nature and extent of the state's Medicaid obligations after July 1, 1987, the effective date of the 209(b) option. Schweiker v. Gray Panthers, supra.
In this case the state plan in effect on January 1, 1972 was not made part of the record. It is impossible to determine, therefore, whether the state plan then in effect required, as claimed by plaintiff, the use of a resource spend down. Because the record is silent on this issue, plaintiff cannot prevail in her claim. Neri v. Powers, supra. At the fair hearing plaintiff did present both documentary and oral evidence tending to prove that both immediately before and after January 1, 1972, defendant had a policy and practice of utilizing a resource spend down with respect to applicants whose assets exceeded the Medicaid limit. The testimony of case workers familiar with defendant's practices, as well as defendant's Uniform Policy Manual strongly suggest that had plaintiff's application been considered under the practice in effect as of January 1, 1972, a resource spend down would have been utilized with respect to plaintiff's excess assets. A 209(b) state, however, is required to utilize a resource spend down only If so required by its state plan in effect on January 1, 1972. Since plaintiff has failed to provide record evidence of defendant's state plan, she cannot prevail in this case. For the purpose of addressing all of plaintiff's claims, however, the balance of her arguments will be considered.
Assuming, arguendo, that the 1972 approved state Medicaid plan authorized a resource spend down, plaintiff asserts that federal law does not prohibit a resource spend down. Plaintiff must advance this argument because in 1980 the Health Care Financing Administration (HCFA) issued a so-called "Action Transmittal", in which it prohibited, effective July 1, 1987, state agencies administering the Medicaid program from utilizing a resource spend down.[3]
In response to the transmittal defendant rescinded its use of a resource spend down. In order to avoid Supremacy Clause problems; State v. Amore, 205 Conn. 104 (1987); plaintiff must establish that the HCFA directive is not binding on the defendant.
Relying on Westmiller by Hubbard v. Sullivan,790 F. Sup. 260 (W.D.N.Y. 1990), plaintiff claims that the HCFA Action Transmittal is not entitled to deference both because CT Page 6288 it was promulgated long after the enactment of the statute it purported to interpret and because it contradicted previous agency interpretation of the same statute.42 U.S.C. § 1396a(a) provides in relevant part that, "A State plan for medical assistance must include reasonable standards . . . for determining eligibility for and extent of medical assistance under the plan which . . . (D) provide for flexibility in the application of such standards with respect to income by taking into account . . . the costs . . . incurred for medical care" (Emphasis supplied). While this provision provides that the state plan provide "for flexibility with respect to income" it does not refer to resources. Prior to the 1980 HCFA Action Transmittal, the Department of Health and Human Services interpreted this provision to allow a resource spend down at the option of the participating states, even though the statute refers only to income. In the face of HCFA'S most recent interpretation, however, the defendant is prohibited from utilizing a resource spend down unless HCFA's interpretation is given no weight.
Ordinarily, an agency's interpretation of its own statute is entitled to great deference. Mercado v. Commissioner of Income Maintenance, 222 Conn. 69 (1992) (cites omitted). The presumption of deference, however, may give way when the interpretation "was not made contemporaneously with enactment of the statute and . . . it contradicts the position which the agency had taken previously." General Electric v. Gilbert, 429 U.S. 125,143-44, 97 S.Ct. 401, 411-412, 50 L.Ed.2d 343 (1976). The record in this case discloses that the 1980 HCFA transmittal reversed a long-standing interpretation of the same statute. "It was clearly not issued contemporaneously with enactment of the Medicaid Act, but postdated passage of the Act by approximately 15 years. Further, in interpreting the statute, the Secretary espoused a position directly contrary to the position it held for 14 straight years prior to the issuance of the Transmittal." Westmiller by Hubbard v. Sullivan, supra at 266. For these reasons the 1980 transmittal is not entitled to deference. Consequently, the defendant is not prohibited, by virtue of the HCFA transmittal, from utilizing a resource spend down in evaluating applications for Title XIX assistance.
 C.
The remaining question is whether the defendant, although permitted to use a resource spend down, is so required. General Statutes Sec. 17-82d(c) provides that "No person shall be eligible for title state supplement program whose assets as defined by the commissioner exceed sixteen CT Page 6289 hundred dollars, or if living with a spouse, exceed twenty-four hundred dollars." The plain language of the statute itself prohibits the defendant from granting Title XIX benefits to any married person, such as plaintiff, whose assets exceed twenty-four hundred dollars. Additionally, the use of a resource spend down appears, by implication, to be barred by General Statutes Sec. 17-134b. That provision directs the Commissioner to grant assistance to individuals whose income is applied to the cost of authorized medical care: "Any income in excess of the applicable amounts shall be applied as may be required by said federal law, and assistance shall be granted for the balance of the cost of authorized medical assistance." (Emphasis supplied). Because the enumeration of a power in a statute impliedly forbids things not enumerated, State ex. rel. Barlow v. Kaminsky,144 Conn. 612 (1957), Connecticut law prohibits the use of a resource spend down.
Thus, while federal law may permit use of a resource spend down, Connecticut law does not. Plaintiff's reliance on Hessian and Foley is unavailing since both Illinois and Massachusetts statutes, unlike Connecticut's, specifically authorize a resource spend down. In Hessian, the court noted that the Illinois code, "requires that, in the case of single individuals residing alone, the Department must disregard at least $1500 in assets when determining Medicaid eligibility." 544 N.E.2d at 757. The Illinois court further observed that the lower appellate court, "agreed with Hessian that the Illinois Public Aid Code requires the Department to utilize a resource spend down' methodology in determining an applicant's eligibility." Id. at 753.
Finally, petitioner asserts that Connecticut's asset disregard statute requires the use of a resource spend down. General Statutes 17-82, 17-134b and 17-134c makes ineligible any married person whose assets exceed $2400. Put differently, DIM must disregard $2400 of a married person's assets when considering eligibility for Title XIX. Petitioner argues that without a resource spend down she will have to deplete all of her resources to become eligible. Because state and federal law explicitly allow an applicant to retain up to $2400 in resources, it appears that with or without a resource spend down petitioner cannot be required to divest herself of the statutorily protected $2400 as a condition of eligibility. In the absence of any proof that petitioner was not permitted to retain the $2400 of protected assets plaintiff cannot prevail in this claim.
While this is a case in which the plaintiff appears to "have all the logic and policy on her side of the argument, CT Page 6290 but the state appears to have the law, "Harriman v. Commissioner of Maine Department of Human Resources, #90-0046, F. Supp. (D. Me. Nov. 9, 1990), our Supreme Court has again reminded us that policy flaws in the Medicaid statute are a matter for legislative correction, not judicial modification. Mercado v. Commissioner of Department of Income Maintenance, supra. Because this court is not free to substitute its judgment for the state and federal legislatures, and because it concludes that neither state nor federal law require the use of a resource spend down, it declines to reverse the decision of the hearing officer. The plaintiff's appeal is therefore dismissed.
In summary this court concludes that the plaintiff has not sustained her burden of proving that the state plan in effect as of January 1, 1972, authorizes the use of a resource spend down. Even if plaintiff had provided proof of that fact she cannot prevail because, even assuming the HCFA prohibition should be ignored, state law does not require the use of a resource spend down. In the absence of any claim that use of a resource spend down is required by federal law, the defendant did not act illegally, arbitrarily or capriciously in denying plaintiff's application. Plaintiff's appeal is therefore dismissed.
Robert L. Holzberg, J.