[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
This is an administrative appeal from the decision of the Department of Social Services, which denied the application of the plaintiff, Victoria Skindzier, for Medicaid benefits on the grounds that a testamentary trust which was created pursuant to the Will of the plaintiff's husband was an improper transfer in violation of Medicaid transfer of asset rules. The appeal is filed pursuant to the Uniform Administrative Procedure Act ("UAPA"), General Statutes §§ 4-166 et seq. and 4-183.
On December 31, 1997 Mrs. Skindzier's co-conservators filed an application for medical assistance on behalf of Mrs. Skindzier with the Department of Social Services. Mrs. Skindzier has been disabled for a number of years by both blindness and advanced Alzheimer's disease and needs the care and supervision of a convalescent home in order to survive. Mrs. Skindzier has been institutionalized in a nursing home since June 1995. On July 23, 1998 the application was denied on the basis of an informal opinion from the Attorney General's office that the death of Mrs. Skindzier's husband and the terms of his Will constituted a CT Page 854 transfer of assets done for the purpose of qualifying Mrs. Skindzier for medical assistance.
Mr. Bernard Skindzier, Victoria Skindzier's spouse, executed a will on March 26, 1996 at a time when he was suffering from prostate cancer which had metastasized. He died two months later on May 20, 1996. Under the terms of Bernard Skindzier's will, most of his property passed to the trustee of two trusts. The trustee was to pay all net income from the trusts to Mrs. Skindzier.
Upon her death, the assets of the trust are to be distributed to various individuals. The amount distributed to the trusts was $675,000.
Mrs. Skindzier's income from Social Security, a pension and testamentary trusts pays a substantial portion, but not all, of her monthly care costs. She has no assets of her own and applied for Medicaid assistance to cover the shortfall.
The court's review of the decision of an administrative agency is highly deferential. Neri v. Powers, 3 Conn. App. 531, 537, 490 A.2d 528
(1985); see also General Statutes § 4-1830). "Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law. . . . Connecticut Light PowerCo. v. Texas-Ohio Power, Inc., 243 Conn. 635, 642-43, 708 A.2d 202
(1998)." (Internal quotation marks omitted.) Connecticut Assn. ofNot-for-Profit Providers for the Aging v. Dept. of Social Services,244 Conn. 378, 389, 709 A.2d 1116 (1998).
The plaintiff is aggrieved by the decision of the Fair Hearing Officer because she has been denied benefits for a state medical assistance program as a result of the hearing and its findings. Mrs. Skindzier has no access to the principal of the trusts for her benefit; is severely disabled by illness and old age and is unable to work. She has no other means of paying or providing for her essential medical needs other than through state medical assistance. Water Pollution Control AuthorityKenney, 234 Conn. 488, 662 A.2d 124 (1995). CT Page 855
No court of this state has considered whether a testamentary trust created pursuant to a will constitutes a transfer of assets for the purpose of qualifying for Medicaid. Therefore, under Connecticut Light Power Co. v. Texas-Ohio Power, Inc., 243 Conn. 635, 642-43 708 A.2d 202
(1998) and Connecticut Assn. of Not-for-Profit Providers for the Agingv. Dept. of Social Services, 244 Conn. 378, 389, 709 A.2d 1116 (1998), the decision of the Fair Hearing Officer in this case is not entitled to special deference.
"The federal Medicaid program was enacted in 1965 as a cooperative federal-state endeavor designed to provide health care to needy individuals. 42 U.S.C. § 1396 et seq.; Atkins v. Rivera, 477 U.S. 154,156, 106 S.Ct. 2456, 91 L.Ed.2d 131 (1986). The program provid[es] federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons. Harris v. McRae,448 U.S. 297, 301, 100 S.Ct. 2671, 65 L.Ed.2d 784, reh. denied,448 U.S. 917, 101 S.Ct. 39, 65 L.Ed.2d 1180 (1980). Clark v.Commissioner, 209 Conn. 390, 394, 551 A.2d 729 (1988). States are not required to participate in the program, but once a state chooses to adopt the program it must establish a plan conforming with the requirements of the federal statute. Id. Connecticut has elected to participate in the program and has assigned to the department the task of administering the program. General Statutes [Rev. to 1993] § 17-134a et seq." Matarazzov. Rowe, 225 Conn. 314, 319 623 A.2d 470 (1993).
"As originally enacted [the] Medicaid [Act] required participating States to provide medical assistance to categorically needy individuals who received cash payments under one of four welfare programs established elsewhere in the Act. . . . The categorically needy were persons whom Congress considered especially deserving of public assistance because of family circumstances, age, or disability. States, if they wished, were permitted to offer assistance also to the medically needy — persons lacking the ability to pay for medical expenses, but with incomes [or resources] too large to qualify for categorical assistance. Schweiker v.Gray Panthers, 453 U.S. 34, 37, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981). [Matarazzo v. Rowe, supra, 225 Conn. 319.] Connecticut has chosen to cover the medically needy." (Internal quotation marks omitted.) Forsythv. Rowe, 226 Conn. 818, 823-24, 629 A.2d 379 (1993). The medically needy become eligible for medical assistance by spending their income on medical expenses to such an extent that their net income, after deducting the medical expenses, falls below the income eligibility set by the state in its plan. See 42 U.S.C. § 1396a(2)(17) and Ahern v. Thomas,248 Conn. 708, 714, 733 A.2d 756 (1999).
Federal Medicaid law contains certain provisions to prevent people from CT Page 856 transferring their assets for less than fair value so that they or their spouse can qualify for Medicaid payments. In this case the Commissioner of Social Services claims that the testamentary trust created pursuant to the terms of Mr. Skindzier's will was a "transfer" made for the purpose of qualifying his spouse, the plaintiff, for Medicaid benefits. The plaintiff argues that federal law specifically exempts trusts created by will from being considered to be such a disqualifying transfer and that neither state, nor federal law requires that a husband provide assets sufficient for his wife's medical care after he dies.
Federal statute sets forth the standard for determining if a disqualifying transfer of assets has taken place:
 [T]he State plan must provide that if an institutionalized individual or the spouse of such an individual . . . disposes of assets for less than fair market value on or after the look-back date specified in subparagraph (B)(i), the individual is ineligible for medical assistance for [nursing facility] services . . . The look-back date specified in this subparagraph is a date that is 36 months (or in the case of payments from a trust or portions of a trust that are treated as assets disposed of by the individual pursuant to paragraph (3)(A)(iii) or 3(B)(ii) of subsection (d) of this section, 60 months) before the date specified in clause (ii). [The date specified in clause (ii) is the date the individual is both institutionalized and has applied for medical assistance.] 42 U.S.C.A. § 1396p(c)(1).
Subsection (d) of 42 U.S.C.A. § 1396p provides:
(d) Treatment of trust amounts
 (1) For purposes of determining an individual's eligibility for, or amount of, benefit under a State plan under this subchapter, subject to paragraph (4), the rules specified in paragraph (3) shall apply to a trust established by such individual.
(2)(A) For purposes of this subsection, an individual shall be considered to have established a trust if assets of the individual were used to form all or part of the corpus of a trust and if any of the following individuals established such trust other than by will: CT Page 857
(i) The individual.
(ii) The individual's spouse . . .
(B) In the case of an irrevocable trust —
 (ii) any portion of the trust from which, or any income on the corpus from which, no payment could under any circumstances be made to the individual shall be considered, as of the date of establishment of the trust (or, if later, the date on which payment to the individual was foreclosed) to be assets disposed by the individual for purposes of subsection (c) of this section, and the value of the trust shall be determined for purposes of such subsection by including the amount of any payments made from such portion of the trust after such date. Emphasis added.
Connecticut Uniform Policy Manual Section 3025.05 defines a transfer of assets as follows:
 A. An individual who transfers an asset for the purpose of establishing or maintaining eligibility is ineligible for any program, subject to the provisions of this chapter.
The transfer of asset rules set out a number of exceptions to the rule set forth in A above, including Section 3026.10E:
 Transfers Made Exclusively for Reasons Other than Qualifying. An individual may transfer an asset without penalty if he or she provides clear and convincing evidence that the transfer was made exclusively for a purpose other than qualifying for assistance.
The Uniform Policy Manual also provides in Section 3026.15:
 1. The Department considers an individual who transfers an asset pursuant to a court order to have made the transfer to comply with the court order, rather than qualify for assistance.
As used in the foregoing sections, the word "transfer" refers to CT Page 858 voluntary, purposeful actions taken by living persons.
The defendant's position in this appeal is based largely on its justifiable intention to follow the Supreme Court's admonition in Forsythv. Rowe, 226 Conn. 818, 828-829, 629 A.2d 379 (1993) that the Medicaid system should be preserved for those who are truly financially needy:
 Our conclusion reflects the legislative concern that the Medicaid program not be used as an estate planning tool. The Medicaid program would be at fiscal risk if individuals were permitted to preserve assets for their heirs while receiving Medicaid benefits from the state. Congress enacted the Medicaid qualifying trust provision as an addition to the "provisions designed to assure that individuals receiving nursing home and other long-term care services under Medicaid are in fact poor and have not transferred assets that should be used to purchase the needed services before Medicaid benefits are made available." H.R. No. 99-265, 99th Cong., 1st Sess. 71 (1985).
However, the defendant has not pointed to any federal or state law which indicates that a trust set up under a will was meant to be a disqualifying transfer for Medicaid purposes. This is not surprising because Congress has consistently distinguished between testamentary transfers and inter vivos transfers, thus demonstrating an intention to differentiate between the disposition of assets occurring before and after death. In specifying which trusts will disqualify an applicant for medical assistance (Medicaid Qualifying Trusts), Congress has specifically exempted testamentary trusts, recognizing the difference between assets which pass by Will and those which pass by lifetime gift.
In defining transfer of assets, 42 U.S.C. § 1396p (c)(1), set forth above on page 5, also defines the look-back date, which is critical in determining whether a potentially disqualifying transfer of assets took place. The definition of the look-back date ". . . is a date that is 36 months (or, in the case of payments from a trust or portions of a trust that are treated as assets disposed of by the individual pursuant to paragraph (3)(A)(iii) of subsection (d) of this section, 60 months) . . ." Subsection (d), entitled "Treatment of trust a mounts" provides that subsection applies only to trusts "other than by will." Emphasis added.
If subsection (d) excludes trusts established by will and if subsection (c) refers to subsection (d) in determining the applicable date for transfer of assets, one reasonable interpretation is that Congress intended to completely exclude testamentary trusts from the transfer of CT Page 859 asset section.
The portion of Medicaid law which deals with periods of ineligibility of spouses further reinforces the plaintiff's argument that Congress did not mean for the Medicaid laws to apply to decedents or their estates. In42 U.S.C. § 1396p(c)(4) Congress requires apportionment of any period of eligibility between the two spouses. Since a deceased person is not eligible for medical assistance, this section reinforces the concept that Congress was not legislating about estates in the transfer of asset rules regarding spouses. A married couple consists of two living partners in subsection (c) (transfer of assets provision), otherwise, the subsection pertaining to apportionment of eligibility is meaningless or impossible to apply.
The Connecticut legislature has also distinguished dispositions by Will from those by inter vivos trusts for Medicaid purposes. If a person establishes an inter vivos trust for the benefit of himself or his spouse after 1992, and then applies [or his spouse applies] for state assistance within the "Lookback period" established by Medicaid law (42 U.S.C.A. § 1396p(c)), the trust may be dissolved by court order and the trust corpus returned to the settlor of the trust. Connecticut General Statutes § 45a-486. The legislature could have included testamentary trusts within this framework of disfavored trusts, but chose not to do so, apparently recognizing the distinction between voluntary lifetime gifts and bequests as a result of the involuntary act of dying.
In Bezzini v. Department of Social Services, 49 Conn. App. 432,715 A.2d 791 (1998), the Appellate Court considered a case in which the spouse of the Medicaid applicant had substantial assets and created an inter vivos trust which had the effect of making those assets unavailable for the applicant's care. Bezzini is important in the context of the present case because the Court differentiated between inter vivos and testamentary trusts in a disqualifying transfer of assets case.
In Bezzini, the plaintiff's spouse, Charles Bezzini, who had been diagnosed with prostate cancer, established a revocable inter vivos trust, naming himself as the sole beneficiary during his lifetime. Charles Bezzini named the couple's two sons as the trustees and sole beneficiaries of the trust. Unlike the trusts set up by Mr. Skindzier, the Bezzini trust contained no provisions for the care and maintenance of the plaintiff.
In Bezzini the plaintiff claimed that the inter vivos trust served the same purpose as a will, transfer of asset rules did not apply to the postmortem distribution of property through a will, and by analogy they should not apply to the transfer into the inter vivos trust. The CT Page 860 Appellate Court held that inter vivos trusts and testamentary trusts were different because testamentary trusts were governed by the state's probate rules including the common law statute of wills. In so holding, the Court clearly implied that the Medicaid transfer of asset rules do not apply to post mortem transfers such as the one at issue in this case:
 A will is a unique kind of transfer, with special rules associated with the proper execution and administration thereof. Barnes v. Viering, 152 Conn. 243, 246, 206 A.2d 112 (1964); Crane v. Manchester, 143 Conn. 498, 500-501, 123 A.2d 752 (1956). The creation of a revocable trust is not a testamentary act and need not conform to the requirements of the common-law statute of wills. Cramer v. Hartford-Connecticut Trust Co., 110 Conn. 22, 33-34, 147 A. 139 (1929). Under a will, a spouse need only claim the spousal share if disinherited; see General Statutes § 45a-436; Del Vecchio v. Del Vecchio, 146 Conn. 188, 192-93, 148 A.2d 554 (1959). Alternatively, a spouse is unable to claim a spousal share against a trust. Cherniack v. Home National Bank Trust Co., 151 Conn. 367, 370-71, 198 A.2d 58
(1964). . . . We conclude, therefore, that the rules applicable to wills should not be applied to the plaintiff's situation where a revocable trust was the chosen instrument of the plaintiff's spouse.
49 Conn. App. 442-443.
As the Bezzini court recognized, a will is a unique kind of transfer, which must be executed and administered in accordance with special rules. In this case the "transfer" occurred by virtue of the terms of Mr. Skindzier's Will after his death. The defendant makes no claim that either the execution or the administration of Mr. Skindzier's Will was not done in accordance with Connecticut probate or estate law.
Connecticut law does not permit a deceased person to continue to own property. The statutes of this state set forth a procedure for the orderly transfer of a deceased person's assets either according to his will or the laws of intestacy. See e.g., Connecticut General Statutes §§45a-273, et seq. Under the laws of this state competent testators are free to leave their property as they wish, subject only to the limitations of a spousal elective share and a family allowance. Connecticut General Statutes §§ 45a-320, 45a-321, 45a-436. CT Page 861
There is no dispute that in this case after the death of Mr. Skindzier the proper procedures set forth under the probate statutes were followed. Mr. Skindzier's medical and other bills were paid during the administration of the estate, and his surviving spouse was granted a family allowance pursuant to § 45a-320 of $30,000 during the administration of the estate. An attorney was appointed by the court to protect Mrs. Skindzier's interest during estate administration while new conservators were appointed to replace the deceased Mr. Skindzier.
Both the court appointed attorney and the conservators could have filed an election against Mr. Skindzier's Will under the terms of §45a-436(a), which provides:
 (a) On the death of a spouse, the surviving spouse may elect as provided in subsection (c) of this section, to take a statutory share of the real and personal property passing under the will of the deceased spouse. The "statutory share" means a life estate of one-third in value of all the property passing under the will, real and personal, legally or equitably owned by the deceased spouse at the time of his or her death, after the payment of all debts and charges against the estate. The right to such third shall not be defeated by any disposition of the property by will to other parties.
They did not elect against Mr. Skindzier's estate because Mrs. Skindzier received much more income under the terms of Mr. Skindzier's will than she would have had she elected her statutory share under § 45a-436(a). However, for the purposes of this case, it was their ability to elect against the estate, rather than the actual election, which is significant.
The Bezzini court specifically recognized the ability to elect a statutory share under the probate laws of this state as a distinction between an inter vivos trust of which the spouse is not a beneficiary, and a will under which the spouse is disinherited. In the former case the spouse has no statutory remedy or ability to reach any of her spouse's assets, while in the later case, a spouse can reach some portion of those assets, that is, the spousal elective share. 49 Conn. App. 442-443.
The plaintiff argues that labeling the testamentary trust a disqualifying transfer here is tantamount to federal preemption of the law of wills, an area traditionally left to the states. The defendant admits that federal law has not preempted this state's law of wills. He further states that the "Department is merely applying Medicaid rules to CT Page 862 the Skindziers." Brief of Defendant Commissioner of Social Services, p. 8. Notwithstanding the foregoing assertion, application of the Medicaid rules to Mr. Skindzier's testamentary transfer as the Commissioner has done is untenable absent federal preemption of this state's law of Wills. There simply is no requirement in the state of Connecticut that a decedent leave any amount to provide for the care of a spouse.
The similarity between the ultimate effect of the trust in Bezzini and the trusts in the present case have apparently caused the Commissioner to downplay, if not completely ignore, the significant distinction between ante mortem and post mortem transfers of assets. Other than the fact that Mr. Skindzier attempted to provide income to care for his ailing wife, while Mr. Bezzini did not, there is no practical difference between the effect of the inter vivos trust in Bezzini, and the testamentary trusts in this case. Both trusts passed assets to persons other than the spouse of the settlor/testator.
The time of the transfer in relation to the death of the transferor creates the crucial distinction between the Bezzini case and this case. In Bezzini the trust was created before the settlor's death, but only became irrevocable after his death. 49 Conn. App. at 440. In this case the trust was not created until after Mr. Skindzier died. Upon his death, Mr. Skindzier was not required to leave any amount to his spouse in his Will or otherwise provide for his spouse after his death.
It is an unfortunate irony that if Mr. Skindzier had not used the vehicle of a testamentary trust to provide for the care of his spouse, but had instead disinherited her completely, his actions would have appeared less like those prohibited in Bezzini and Mrs. Skindzier's application might have been granted.
For the reasons set forth above, the court finds that the plaintiff has been prejudicied because the administrative decision was in violation of statutory provisions in that the disposition of Mr. Skindzier's assets under a testamentary trust was not a disqualifying transfer under state or federal Medicaid law. The appeal is, therefore, sustained.
The plaintiff has asked this court to use its discretion to award attorney's fees under Connecticut General Statutes § 4-184a(b) because the agency acted "without any substantial justification? "Substantial Justification" connotes reasonableness or a reasonable basis in law or fact. Burinskas v. Department of Social Services, 240 Conn. 141,156, 691 A.2d 586 (1997). It is a "demanding standard" which has been construed to mean "entirely unreasonable or without any reasonable basis in law or fact." Id. Even though the agency's practice was found to be contrary to the relevant legislation, its action was not unreasonable or CT Page 863 without basis in law or fact so as to subject it to attorney's fees.Connecticut Ass'n of Not-For-Profit Providers For The Aging v.Department of Social Services, 244 Conn. 378, 401, 709 A.2d 1116 (1998).
The plaintiff herself likened the federal Medicaid laws to a "Serbonian bog." See Reply Brief to the Brief of the Defendant Commissioner of Social Services, p. 1, citing O'Callaghan v. Commissioner of SocialServices, 53 Conn. App. 191, 194, 729 A.2d 800 (1999) and Ross v.Giardi, 237 Conn. 550, 554, 680 A.2d 113(fn4) (1996). In light of the murky nature of federal Medicaid law the court cannot say that the Commissioner's position in this case was without any reasonable basis in law. The court declines to award the plaintiff attorney's fees under § 4-184a(b).